PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JOEL P. BEARDMAN, ) | |
| ) | CASE NO. 4:20-CV-2149 |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE BENITA Y. PEARSON |
| ) | |
| SHEET METAL, AIR, RAIL, AND ) | **FINDINGS OF FACT AND** |
| TRANSPORTATION ASSOCIATION ) | **CONCLUSIONS OF LAW** |
| LOCAL UNION NO. 33 YOUNGSTOWN ) | |
| DISTRICT PENSION FUND, *et. al.*, ) | |
| ) | [Resolving ECF Nos. 24, 26] |
| Defendants. ) | |

Pending before the Court are competing Motions for Judgment on the Administrative Record by Plaintiff Joel P. Beardman (ECF No. 24) and Defendant Sheet Metal, Air, Rail, and Transportation Association Local Union No. 33 Youngstown District Pension Fund, as well as Defendant Sheet Metal, Air, Rail, and Transportation Association Local Union No. 33 Youngstown District Pension Fund Trustees (collectively, the "Plan") (ECF No. 26), pursuant to the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*., as amended.[1] Plaintiff initiated this action seeking judicial review of the Plan's determination that he is ineligible for Disability Pension benefits. ECF No. 1.

---

[1] The parties have fully briefed both Plaintiff's motion (ECF Nos. 28, 30) and the Plan's motion (ECF Nos. 26, 29).

(4:20-CV-2149)

After considering the parties' positions[2] and the applicable law, the Court enters final judgment in favor of the Plan and against Plaintiff.

## I.  Findings of Fact

1. Plaintiff suffers from Chron's disease, the severity of which has increased over time.  Plaintiff has a history of "bowel resection in 1994 and 1995, and multiple fistula repairs in 1991 and 1999."  ECF No. 18-1 at PageID #: 662.

2. At all times relevant to this case, eligibility criteria for a Disability Pension were located at Sections 3.08. 3.10. 3.11 3.12 of the Plan's Pension Plan Rules and Regulations as Amended and Restated Effective January 1, 2015 (the "Rules").  ECF No. 18-1 at PageID #: 556 – 557.

3. Section 3.08 of the Rules (ECF No. 18-1 at PageID #: 556) provides:

**SECTION 3.08. DISABILITY PENSION— ELIGIBILITY AND COMMENCEMENT.**

(a)  A Participant may retire on a Disability Pension if he retires as the result of total and permanent disability as defined in Section 3.10, provided he has accumulated at least ten (10) Pension Credits prior to becoming totally and permanently disabled as defined in this Plan, and he has at least 155 hours of Work in Covered Employment within the 24month period of time prior to the date he became totally and permanently disabled.

(b) An Active Participant on or after January 1, 1997 may retire on a Disability Pension if he retires as the result of total and permanent disability as defined in Section 3.10, provided he has accumulated at least Five (5) Years of Vesting Service prior to becoming totally and permanently disabled as defined in this Plan, and he has at least 155 hours of Work in Covered Employment within the 24-month period of time prior to the date he became totally and permanently disabled.

(c) The Disability Pension will be payable commencing with the sixth month after the

---

[2]  The parties' motions are replete with unnecessary jabs and display a lack of decorum unbecoming their authors.  While zealous advocacy is often appreciated, the parties failed, at times, to remember their vows of civility in proceedings before the Court.

(4:20-CV-2149)

> commencement of disability or the first day of the month following the month a proper application is completed in accordance with Sections 6.01 and 6.02 whichever is later.

4. Section 3.10 of the Rules (ECF No. 18-1 at PageID #: 556) provides:

> **SECTION 3.10. PERMANENT DISABILITY.**
>
> A Participant shall be considered permanently and totally disabled only if the Board of Trustees, in its sole and absolute judgment, finds, on the basis of medical evidence, that:
>
>> (a) he has been totally disabled by bodily injury or disease so that he is prevented thereby from engaging in future work for remuneration or profit in a job classification of the type specified in the Collective Bargaining Agreement; and
>>
>> (b) such disability will be continuous and permanent during the remainder of his life.

5. Section 3.11 of the Rules (ECF No. 18-1 at PageID #: 556 – 557) provides:

> **SECTION 3.11. PROOF OF TOTAL AND PERMANENT DISABILITY.**
>
> The Trustees may accept the certification of any duly licensed medical practitioner acceptable to the Board of Trustees that the Participant is totally and permanently disabled, or the Trustees may require that the Employee applying for a Disability Pension submit to an examination by a duly licensed medical practitioner selected by the Trustees and additionally may require such Employee to submit to a re-examination periodically as the Trustees may direct. The Trustees may accept as evidence of total and permanent disability, a determination by tide Social Security Administration that the Employee is entitled to a Social Security Disability Benefit in connection with his Old Age and Survivors Insurance Coverage. The Trustees may at any time or from time to time require evidence including any questionnaire submitted annually by the Trustees to the Pensioner, of the Participant's continued entitlement to such Disability Pension, as well as required additional examinations on a periodic basis.

6. Section 3.12 of the Rules (ECF No. 18-1 at PageID #: 557) provides:

> **SECTION 3.12. EARNINGS BY A DISABILITY PENSIONER AND TIMELY REPORTS.**
>
> A Disability Pensioner shall report any and all earnings from any employment or gainful pursuit to the Trustees, in writing, within fifteen (15) days after the end of any month in which he has such earnings. A Disability Pensioner shall be disqualified from benefits in any month in which he earns more than $1,000 in any employment or

3

(4:20-CV-2149)

gainful pursuit. If a Disability Pensioner foils to make timely reports as required in this Section 3.12, he shall be disqualified for pension benefits for the month or months in which he had earnings from employment or other gainful pursuit. He shall also be disqualified for pension benefits for up to six (6) additional months for failure to make timely reports. This penalty shall apply to each such violation unless the Trustees determine that there were extenuating circumstances which prevented the Employee from making such timely filings. The Trustees may discontinue Disability Pension benefits to any Pensioner who refuses to submit the annual questionnaire provided by the Trustees asset forth in Section 3.11.

7. At all times relevant to this case, the procedure for handling claims for Disability Pension was located at Section 6.04 of the Rules. *See* [ECF No. 23 at PageID #: 802](); *see also* [ECF No. 18-1 at PageID #: 577 – 579]().

8. Section 6.04 of the Rules ([ECF No. 18-1 at PageID #: 577 – 579]()) provides:

**SECTION 6.04. CLAIMS AND APPEALS - FOR DISABILITY PENSION**

(a) Any claim for a Disability Pension must be in writing on a form provided by the Trustees and must be made within six months after filing for Social Security Disability Benefits. Unless an extension applies, the Trustees must advise the claimant of its initial decision within 45 days of actual receipt of the written claim.

(b) The Trustees may extend the date for rendering an initial decision by two separate periods of 30 days each, provided any extension is due to circumstances beyond the control of the Plan. Such circumstances will include a delay in obtaining medical information from a physician or other provider.

The Plan will notify the claimant in writing before the end of the 45 days if the first extension is utilized and prior to 75 days if the second extension is utilized.

(c) Any request to the claimant for additional information must be made within the initial 45 day period. The claimant then has 45 days to obtain the additional information. If the claimant does not provide the requested information, then the claim must be denied within 30 days of the claimant's deadline.

(d) The Notice of Adverse Determination will include the following:

(i) Specific reason or reasons for the adverse determination.
(ii) Reference to the specific Plan provision on which the determination is based.

4

(4:20-CV-2149)

> > (iii) Description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary.
> > (iv) Description of Plan's review procedures and applicable time limits.
> > (v) Statement of the claimant's right to bring a civil action under ERISA Section 502(a).
> > (vi) If an adverse determination based upon an internal rule, guideline, protocol or other similar criteria, a statement that claimant may obtain a free copy of such rule, guideline, protocol or other similar criteria upon request.
> > (vii) If an adverse determination based on a medical necessity or experimental treatment or similar exclusion or limit, a statement that claimant may obtain a free copy of an explanation of the scientific or clinical judgment for the determination upon request.
>
> (e) A claimant may file a written appeal of a denied claim with the Trustees within 180 days after receiving notice that his claim has been denied. A claimant may authorize a representative to act on the claimant's behalf for this purpose. An authorization to use a representative must be provided to the Trustees on a written form provided by the Plan.
>
> (f) If the claimant files a timely written appeal, he may:
>
> > (i) Submit additional materials, including any comments, statements or documents; and
> >
> > (ii) Review all relevant information (free of charge) upon reasonable request to the Trustees. A document record or other information is relevant if:
> > (A) It was relied upon by the Plan in making the decision;
> >
> > > (B) It was submitted, considered or generated (regardless of whether it was relied upon); or
> > >
> > > (C) It demonstrates compliance with the claims processing requirements.
> >
> > (iii) Be advised of identity of any medical experts.
>
> (g)  The Trustees' review shall consider all comments, documents records and other information submitted or considered in the initial determination. The review must considered all comments and records submitted by the participant The appeal cannot defer to the initial claim determination.
>
> If the determination is based on medical necessity or appropriateness the Board of Trustees (or appeals committee) must consult a medical professional who is not the same individual who consulted on the initial review of the claim or a subordinate of that individual.

(4:20-CV-2149)

> (h) Within 45 days after the submission of the written appeal, the Trustees shall render a determination on the appeal of the claim in a written statement. If special circumstances require a delay in the decision, the Trustees shall notify the claimant of the reasons for the delay within the 45-day period. A delayed decision shall be issued no later than 90 days after the date the Trustees receive a request for review. The Plan shall notify the claimant on the decision within five days of the date the decision is made.
>
> Alternatively, the Trustees may also render the decision at the next quarterly meeting. If a request for appeal is received within 30 days of a quarterly meeting, then the decision may be rendered at the subsequent quarterly meeting.
>
> (i) The Trustees' written decision on a claimant's appeal shall:
>
>> i. Contain the reason or reasons for the decision;
>>
>> ii. Refer to specific Plan provisions on which the decision is based;
>>
>> iii. Notify the claimant of his right to access and copy (free of charge) all documents, records and other information relevant to the claim;
>>
>> iv. Notify the claimant of the right to bring a civil action under ERISA; and
>>
>> v. Notify the claimant of any additional voluntary appeal procedures offered by the Plan, if any.
>
> (j) The determination rendered by the Trustees shall be binding upon all parties.

9. Plaintiff started a self-owned company, Beardman HVAC Systems, in 2009. Due to legal issues and associated fees, Plaintiff entered bankruptcy in 2010, after not even operating for a full year. Following a knee operation in December 2010, Plaintiff was inactive for a year hoping to be able to return to work, but, due to the severity of pain resulting from Crohn's disease, Plaintiff was unable to do so. ECF No. 18-1 at PageID #: 743 – 744.

10. On September 20, 2013, the Social Security Administration ("SSA") determined that Plaintiff was disabled as of December 10, 2011, as Plaintiff desired. ECF No 18-1 at PageID #: 681 – 687.

6

(4:20-CV-2149)

   11.   Plaintiff first applied for Disability Pension benefits from the Plan on or about October 2013. ECF No. 23 at PageID #: 801.

   12.   The Plan denied Plaintiff's application on October 3, 2013 because of a failure to work "at least 155 hours in the 24-month period prior" to the date of disability, which was December 10, 2011. ECF No. 18-1 at PageID #: 746.

   13.   Plaintiff requested a reconsideration of the Plan's October 3, 2013 decision in a letter dated October 8, 2013. ECF No. 18-1 at PageID #: 743.

   14.   In response to Plaintiff's October 8, 2013 request for reconsideration, the Plan "requested additional information including a copy of [Plaintiff's] award letter from Social Security," and "medical documentation directly from [Plaintiff's] physician including the nature and onset of [Plaintiff's] disability." ECF No. 18-1 at PageID #: 742.

   15.   After reviewing Plaintiff's award letter from the SSA and medical documentation from Plaintiff's physician, the Plan unanimously upheld their October 3, 2013 decision in a letter dated July 3, 2014 letter. ECF No. 18-1 at PageID #: 725.

   16.   Plaintiff appealed the Plan's denial for a second time, in a letter dated July 16, 2014 letter. ECF No. 18-1 at PageID #: 723 –724.

   17.   In a letter dated December 2, 2014, the Plan again upheld their determination because "no new information was presented to use as a basis for changing their past determination." ECF No. 18-1 at PageID #: 722.

   18.   In a letter dated January 11, 2016, the SSA declared Plaintiff's disability to be continuing. ECF No. 18-1 at PageID #: 523.

(4:20-CV-2149)

19. In February 2016, Plaintiff started working again on a part-time basis with Beardman HVAC Systems. Plaintiff worked a total of 160 hours between February 2016 and May 2016. ECF No. 18-1 at PageID #: 706 – 707.

20. Next, Plaintiff had a colonoscopy completed by Dr. Meredythe A. McNally on May 5, 2016. ECF No. 18-1 at PageID #: 673 – 677.

21. Plaintiff again applied for a Disability Pension on or about May 31, 2016. ECF No. 23 at PageID #: 801.

22. On July 7, 2016, the Plan met and reviewed Plaintiff's application. ECF No. 18-1 at PageID #: 761 – 762.

23. On August 9, 2016, Plaintiff was notified that the board required more information to adjudicate his application. This information included proof of the hours worked prior to the application. ECF No. 18-1 at PageID #: 721.

24. Plaintiff provided that additional information on August 11, 2016. ECF No. 18-1 at PageID #: 706 – 720.

25. During its October 13, 2016 meeting, the Plan decided to take no further action on Plaintiff's May 31, 2016 application for Disability Pension benefits until further review of medical documentation was completed. The Plan directed Attorney Dennis Haines ("Attorney Haines") to submit his findings via electronic mail. ECF No. 18-1 at PageID #: 763 – 764.

26. In a letter dated November 2, 2016, Attorney Haines set forth his findings, ultimately concluding that Plaintiff is not entitled to Disability Pension benefits. ECF No. 18-1 at PageID #: 704 – 705.

27. Dr. Sandy Naples ("Dr. Naples"), who reviewed Plaintiff's May 5, 2016 colonoscopy results, wrote a letter dated December 2, 2016 and reported, "with a reasonable

(4:20-CV-2149)

degree of medical certainty that [Plaintiff] cannot perform the duties inherent to his job." ECF No. 18-1 at PageID #: 703.

28. Having not received a response to his May 31, 2016 application for Disability Pension benefits, Plaintiff sent a follow-up letter on December 5, 2016.  ECF No. 18-1 at PageID #: 697 – 698.

29. In a letter dated December 28, 2016 Plaintiff was notified that the Plan would meet to discuss his application in January 2017.  ECF No. 18-1 at PageID #: 700.

30. In a letter dated December 30, 2016 Attorney Haines, having reviewed Dr. Naples' letter dated December 2, 2016, recommended that the Plan consider sending Plaintiff to a medical professional for an independent medical examination ("IME").  ECF No. 18-1 at PageID #: 695 – 696.

31. On January 19, 2017 the Plan met regarding Plaintiff's application.  ECF No. 18-1 at PageID #: 765 – 766.

32. In a letter dated February 17, 2017, the Plan requested that a medical professional at Summit Gastroenterology Associates conduct an IME of Plaintiff.  ECF No. 18-1 at PageID #: 669.

33. On March 7, 2017 Dr. Shameem Ahmed ("Dr. Ahmed") evaluated Plaintiff, pursuant to the Plan's request in the letter dated February 17, 2017.  In a letter dated April 18, 2017 letter, Dr. Ahmed concluded that "though imaging study results of MRI and CT enterograpy [sic] were not made available for review, [Plaintiff] seems to have significant morbidity from [Chron's disease]" and his condition makes it "difficult and impossible to work." ECF No. 18-1 at PageID #: 661.

9

(4:20-CV-2149)

34. On April 19, 2017 the Plan had a second meeting regarding Plaintiff's request. ECF No. 18-1 at PageID #: 767 – 768.

35. In a letter dated April 25, 2017, the Plan issued a decision denying Plaintiff's application for Disability Pension benefits, a little less than a year after he first applied on May 31, 2016. The Plan reasoned that the qualifying 160 hours of work did not count because it did not occur prior to Plaintiff's disability, because Plaintiff's disability onset on December 10, 2011. Therefore, the Plan denied the application essentially for the same reasons it denied the earlier application – Plaintiff did not have enough qualifying work in the 24-months preceding the onset of total and permanent disability. ECF No. 18-1 at PageID #: 659 – 660.

36. In a letter dated September 25, 2017 Plaintiff submitted an appeal of the denial, arguing about the procedural irregularities, and bias. ECF No. 18-1 at PageID #: 774.

37. On February 7, 2018 the appellate hearing occurred. ECF No. 18-1 at PageID #: 773 – 790.

38. In a letter dated February 16, 2018, the Plan affirmed their previous April 25, 2017 denial. ECF No. 18-1 at PageID #: 758 – 760.

39. After receiving the denial of his appeal, Plaintiff timely filed the instant case before the Court on September 23, 2020. ECF No. 1.

## II. Conclusions of Law

1. Plaintiff brings this claim under 29 U.S.C. § 1132 (a)(1)(B).

2. Plaintiff's claim for benefits must be decided under ERISA's arbitrary and capricious standard based upon the administrative record presented to the Trustees when they denied his appeal. *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609 (6th Cir. 1998).

10

(4:20-CV-2149)

  3. The *Wilkins* guidelines will be used when applying an arbitrary and capricious standard of review. *Price v. Board of Trustees of Indiana Laborer's Pension Fund*, 632 F.3d 288, 295 (6th Cir. 2011).

  4. When trustees of an ERISA plan are vested with discretionary authority by the plan documents to construe plan terms, their decision will not be overturned unless it was an abuse of discretion. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989).

  5. The Trustees have the necessary discretion to apply the ERISA arbitrary and capricious standard to their decision denying Plaintiff's appeal to keep his adjustable benefits. The reviewing court does not have to agree with the Trustees.  When they can offer a reasonable explanation based on the evidence, their decision is not arbitrary and capricious. *Taylor v. Central States Pension Fund*, No. 92-1350, 1993 WL 190915, at *2 (6th Cir. June 3, 1993), cert. denied, 510 U.S. 978 (1993); *Gardner v. Central States, Southeast & Southwest Areas Pension Fund*, No. 93-3070, 1993 WL 533540, at *7 (6th Cir. Dec. 21, 1993); *Whisman v. Robbins*, 55 F.3d 1140, 1144 (6th Cir. 1995).

  6. In applying the arbitrary and capricious standard, a court will factor in whether a conflict of interest existed on the part of the decision-maker. *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 117 (2008).  Indeed, if a plan administrator's decision is rational in light of the plan provisions, a denial of benefits will be affirmed. *Talmon v. Central States, Southeast & Southwest Areas Pension Fund*, 232 Fed.Appx. 467, 468 (6th Cir. 2007); *Lewis v. Central States, Southeast & Southwest Areas Pension Fund*, 484 Fed.Appx. 7, 12 (6th Cir. 2012).

  7. The Plan has an obligation to maintain the actuarial soundness of the Pension Plan and not to pay pensions that violate the terms of the Plan. *Love v. Central States, Southeast &*

11

(4:20-CV-2149)

*Southwest Areas Pension Plan*, No. 1:11-cv-275-HJW, 2012 WL 1081460, at *4 (S.D. Ohio March 30, 2012).

8. "[A] conflict of interest exists for ERISA purposes where the plan administrator evaluates and pays benefits claims[.]" *Helfman v. GE Grp. Life Assur. Co.*, 573 F.3d 383, 392 (6th Cir. 2009) (quoting *DeLisle v. Sun Life Assur. Co. of Canada*, 558 F.3d 440, 445 (6th Cir. 2009)).

9. Section 3.08 of the Rules allows for retirement on a Disability Pension if Plaintiff retires as the result of total and permanent disability, and has both (1) "at least Five (5) Years of Vesting Service prior to becoming totally and permanently disabled[,]" and (2) "has at least 155 hours of Work in Covered Employment within the 24-month period of time prior to the date he became totally and permanently disabled." ECF No. 18-1 at PageID #: 556. The parties agree that Plaintiff suffers from a permanent and total disability that onset December 10, 2011. ECF No 18-1 at PageID #: 681 – 687. The parties also agree that the first condition of Vesting Service is satisfied. ECF No. 23 at PageID#: 802.

10. The heart of this dispute lies with the interpretation of the second condition. The text of the recent work requirement requires that the recent work be completed *prior* to the onset of the disability.

11. Plaintiff argues for a full disability pension because the Plan's "denial of [Plaintiff]'s application was the result of a process fraught with bias and conflict of interest, conducted by trustees with a history of conflict specifically with [Plaintiff]." ECF No. 24 at PageID #: 804. Moreover, Plaintiff raises the following issues as they relate to bias and conflict of interest: (1) the Plan "is both the evaluator and the payor of claims" and has a "past collection history of unusual aggressiveness" towards Plaintiff (ECF No. 24 at PageID #: 819 – 820); (2)

12

(4:20-CV-2149)

the Plan failed to advise Plaintiff within the requisite 45 days prescribed by the Rules, and instead took over 300 days to render its initial decision (ECF No. 24 at PageID #: 820 – 821); (3) the Plan cherry-picked evidence, offered inconstant rationales for benefit denial, and held Plaintiff to a stricter evidentiary standard than other applicants (ECF No. 24 at PageID #: 821 – 824).

      12.     In response, the Plan argues that the denial of Plaintiff's application should be affirmed because the record "shows that [the Plan] denied Plaintiff's claim based on Plan provisions and facts which were reasonably interpreted and applied."  ECF No. 26 at PageID #: 1189.  The Plan adds that Plaintiff's proffered procedural challenges are without merit because none of them are substantiated by evidence and the Plan properly exercised its discretion and arrived at a well-reasoned decision.  ECF No. 26 at PageID #: 1204 – 1207.

      13.     While Plaintiff attempts to argue that this decision is arbitrary and capricious, the Court is not persuaded.  Plaintiff completed the recent work requirement nearly five years after both the onset of a permanent and total disability and several months after a continuing disability finding.  It is neither arbitrary nor capricious for the Plan to decide that Plaintiff is disabled based on the date that Plaintiff himself indicated he was disabled and unable to work on his application for social security benefits – December 10, 2011.  Throughout the record, Plaintiff admits to having trouble accepting that he was disabled which is what allegedly prompted his return to work.  While admirable to work under what must have been very painful and trying conditions, the fact that Plaintiff worked for a few months and then found out he could not does not move Plaintiff's disability onset date to May 2016.  Under the rules of the policy there are only two metaphysical possibilities – either Plaintiff is disabled, or Plaintiff is not disabled.  It is clear from the record that Plaintiff has been totally and permanently disabled since December 10,

13

(4:20-CV-2149)

2011, and failed to meet the requisite number of hours in the 24-month period prior to the onset of total and permanent disability. Plaintiff does not even argue that this requirement was met. The Plan's decision does not rise to the level of arbitrary and capricious. *See* Brooks v. Boilermakers-Blacksmith Union Nat'l Pension Tr., No. 3:15-1034, 2017 WL 413800, at *6 (M.D. Tenn. Jan. 30, 2017), report and recommendation adopted, No. 3:15-1034, 2017 WL 660679 (M.D. Tenn. Feb. 17, 2017) (concluding that defendant's denial of pension benefits to plaintiff was not arbitrary and capricious because plaintiff failed to work "120 hours of Covered Employment either in the year in which [plaintiff] became disabled or the immediately preceding year" and "it would have been error for Defendant not to consider the 120–hour rule in reaching its decision, as this is an unambiguous requisite for an award of disability pension benefits"); Pokorny v. Excavating Bldg. Material & Const. Drivers Union Loc. No. 436 Pension Fund, No. 1:14-CV-02821, 2015 WL 2250881, at *4 (N.D. Ohio May 13, 2015) (ruling that because plaintiff "did not accumulate enough years of employment under the Plan to receive pension benefits[,]" and "[u]nder the arbitrary and capricious standard, a Court must accept an ERISA plan administrator's rational interpretation of a plan even in the face of an equally rational interpretation offered by the participants").

      14.     Similarly, the Court is not persuaded by Plaintiff's arguments raising issues of bias and conflict of interest. While the Court is to consider the potential for conflict of interest in situations in which the Plan handles both the evaluation and payment of claims, the record demonstrates that the Plan's decision was grounded in a fair review of the record. As stated, the unambiguous language of the Rules requires 160 hours of work in the 24-month period prior to the onset of total and permanent disability. Here, Plaintiff failed to meet that requirement because he did not work more than 160 hours in the 24-months prior to December 10, 2011, the

14

(4:20-CV-2149)

onset date of total and permanent disability. Also, the Plan held meetings in January and April 2017 to discuss Plaintiff's claim (ECF No. 18-1 at PageID #: 765 – 768). The combination of a clear application of the Rules and multiple meetings satisfies the Court that no bias or conflict of interest was present warranting reversal of the Plan's decision. *Duncan v. Minnesota Life Ins. Co.*, 845 F. App'x 392, 402 (6th Cir. 2021) (affirming district court holding that conflict of interest did not exist because the "[employer]'s decision was supported by substantial evidence," and "a reasoned deliberative process"); *Cf. DeLisle v. Sun Life Assur. Co. of Canada*, 558 F.3d 440, 448 (6th Cir. 2009) (reversing employer's denial of disability benefits to plaintiff because of "improper communication from [defendant]'s attorneys to file reviewers, and failure to acknowledge the Social Security disability determination in the face of substantial medical evidence indicating the progressive nature of [plaintiff]'s disability show that [defendant] did not engage in a principled, deliberative reasoning process").

### III.  Conclusion

Because the Plan's denial of Disability Pension benefits for Plaintiff was not arbitrary and capricious, the Plan's Motion for Judgment on the Administrative Record (ECF No. 26) is granted and Plaintiff's Motion for Judgment on the Administrative Record (ECF No. 24) is denied. A separate Judgment Entry will issue.

IT IS SO ORDERED.

March 30, 2022                               /s/ Benita Y. Pearson
Date                                          Benita Y. Pearson
                                              United States District Judge